## Richmond.

## FRANK LYNCH V. COMMONWEALTH.

### November 17, 1921.

1. ASSAULT AND BATTERY—*What Constitutes—Battery Includes an Assault—Surrounding Circumstances.*—A battery accompanies and includes an assault. The surrounding circumstances, such as time and place, the relationship or sex of the parties, the subject matter of the words used, may have a most important bearing in determining whether a particular act constitutes an assault and battery. The law upon the subject is intended primarily to protect the sacredness of the person, and secondarily to prevent breaches of the peace.

2. ASSAULT AND BATTERY—*What Constitutes Battery—Intent.*—To constitute battery there must be some touching of the person of another, but not every such touching will amount to the offense. Whether it does or not will depend, not upon the amount of force applied, but upon the intent of the actor.

3. ASSAULT AND BATTERY—*Definition of Battery.*—Battery is defined as: "The actual infliction of corporeal hurt on another (*e. g.*, the least touching of another's person), willfully or in anger, whether by the party's own hand or by some means set in motion by him." And while this definition does not expressly mention rudeness or insult, the word "willfully" clearly implies that those elements, as well as anger, may become a test of the offense. That is to say, the intended injury may be to the feelings or mind as well as to the corporeal person.

4. WORDS AND PHRASES—*"Willfully."*—The word "willfully" is variously defined in legal parlance, and may mean, among other things, "designedly," "intentionally," or "perversely." Its correct application in a particular case will generally depend upon the character of the act involved and the attending circumstances.

5. ASSAULT AND BATTERY—*What Constitutes—Case at Bar.*—In the instant case, the evidence showed that accused entered the house of prosecutrix and said to her that he wanted to kiss a white woman. Prosecutrix replied "No, sir." Thereupon accused put his hand upon her shoulder and said, "I didn't mean to insult

you." At this juncture, prosecutrix told him "to get out," and he left.

*Held:* That the evidence was sufficient to support a verdict of guilty of assault and battery.

6. ASSAULT AND BATTERY—*What Constitutes—Case at Bar.*—In the instant case it was argued for accused that the statement, "I didn't mean to insult you," followed by his leaving almost immediately, disproved a wrongful intention in touching the prosecutrix.

*Held:* That, while this was one way, it was not the only way, in which the jury might under the evidence have fairly weighed his conduct. Accused might have meant by the words "I didn't mean to insult you" a genuine apology, or it might have been an impudent experimental attempt on his part to continue the conversation.

Error to a judgment of the Circuit Court of Montgomery county.

*Affirmed.*

The opinion states the case.

*Harless & Calhoun,* for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *Leon M. Bazile, Second Assistant Attorney-General,* for the Commonwealth.

KELLY, P., delivered the opinion of the court.

The defendant, Frank Lynch, was tried under an indictment containing two counts, the first charging that he broke and entered a dwelling house in the daytime with intent to commit rape, and the second merely charging him with an attempt at the latter offense. He was found guilty of assault and battery, and sentenced to a term in jail and the payment of a fine.

It is conceded by his counsel that, under the indictment for felony as above set out, the defendant could have been

lawfully convicted of assault and battery, provided the evidence was sufficient for that purpose. The sole question presented for our decision is whether the trial court erred in refusing to set aside the verdict as being contrary to the evidence.

The conflicts in the testimony were settled adversely to the accused by the verdict of the jury, and the case, as it comes to us upon the facts is as follows: On the afternoon of March 30, 1920, Mrs. Mary Martin was at home alone with her two small children, the elder of them being only two years of age. She heard a noise, or knocking, at the back door, and, on going to see what it meant, was met at the door by Frank Lynch, who said to her, "Say, Mrs. Martin, I want to kiss a white woman; I want to see what it is like to kiss a white woman." She replied, "No, sir." And he thereupon put his hand upon her shoulder and said, "I didn't mean to insult you." At this juncture, she told him "to get out," and he left.

The evidence was certified in narrative form. We have stated it from the Commonwealth's standpoint as fully as it appears in the record. Was it sufficient to support the verdict?

[1, 2] A battery accompanies and includes an assault. Various definitions of both offenses are found in the books, all substantially much the same; but, as is well said in 2 R. C. L., page 525, "a definition, however carefully drawn or comprehensive in its scope, will furnish no certain or satisfactory solution of the facts in a particular case. While it would seem that there ought to be no difficulty in determining whether any given state of facts amounts to an assault (and battery), the behavior of men toward each other varies by such mere shades that it is sometimes difficult to characterize properly their acts and words." The surrounding circumstances, such as time and place, the relationship or sex of the parties, the subject matter of the

words used, may have a most important bearing in determining whether a particular act constitutes an assault and battery. The law upon the subject is intended primarily to protect the sacredness of the person, and, secondarily, to prevent breaches of the peace. The reason of the law is the life of the law, and this maxim often finds useful application in cases of alleged assault and battery. To constitute battery, there must be some touching of the person of another, but not every such touching will amount to the offense. Whether it does or not will depend, not upon the amount of force applied, but upon the intent of the actor.

[3] "A battery is the unlawful touching of the person of another by the aggressor himself, or by some substance set in motion by him. * * * The intended injury may be to the feelings or mind, as well as to the corporeal person. * * * The law cannot draw the line between different degrees of force, and, therefore, totally prohibits the first and lowest stage of it." 2 Am. & Eng. Ency. L., pp. 953, 955, 959.

"Any touching by one of the person or clothes of another in rudeness or in anger is an assault and battery." *Englehardt* v. *State*, 88 Ala. 100, 7 So. 154; *Jacobi* v. *State*, 133 Ala. 1, 32 So. 158, 163; *Hyde* v. *Cain*, 159 Ala. 364, 47 So. 1014; *Seigel* v. *Long*, 169 Ala. 79, 53 So. 773, 774, 33 L. R. A. (N. S.) 1070.

In *Goodrum* v. *State*, 60 Ga. 509, a case holding that it is an assault and battery for a man, without any innocent excuse, to put his arm around the neck of another's wife against her will, the court said: "To touch a virtuous wife in the way of illicit love is a far greater outrage than to touch her in anger, and equally a breach of the peace. It is violence proceeding from lust, instead of violence proceeding from rage. It issues from the passion which, unrestrained, culminates in rape, instead of from the passion which culminates in homicide."

Mr. Minor defines battery as *"the actual infliction of corporal hurt* on another (*e. g.,* the *least touching* of another's person), *willfully or in anger,* whether by the party's own hand or by some means set in motion by him." Minor's Synopsis Criminal Law, 77.

[4] The above definition by Mr. Minor does not expressly mention rudeness or insult, but. by using the word "willfully" clearly implies that those elements, as well as anger, may become a test of the offense. The word "willfully" is variously defined in legal parlance, and may mean, among other things, "designedly," "intentionally" or "perversely." See 4 Words & Phrases (2nd Series), 1293, *et seq.* Its correct application in a particular case will generally depend upon the character of the act involved and the attending circumstances.

[5] Having in view the foregoing definitions and explanations of the offense, we are unable to say that the verdict of the jury in the instant case was not warranted by the evidence. Upon the case as made by the Commonwealth. the accused, without invitation or excuse, entered the home of the prosecutrix, grossly insulted her, and almost simultaneously placed his hand upon her shoulder. This was an unlawful touching of her person, and, hence, in contemplation of law, a battery.

[6] It is argued that the wrongful intention of the accused in touching the prosecutrix is disproved by his declaration, "I did not mean to insult you," followed almost immediately by his departure from the room. This is perhaps one way, but it is certainly not the only way, in which the jury might under the evidence have fairly weighed his conduct. The exact order of events must here be observed. He entered the house with an evil purpose, which he communicated to Mrs. Martin. She promptly rejected his insulting suggestion. Not stopping with that, he proceeded to place his hand on her shoulder and say, "I did not mean to insult

you." Was this a cessation of his overtures and a genuine apology, or was it an impudent experimental attempt on his part to continue the conversation in the hope of overcoming her objection? He had not yet shown any purpose of leaving the house; that followed promptly, to be sure, but only after he had added one insult to another by placing his hand upon her, and after her second rebuff, which assumed the form of an order to get out of the house. If it be conceded that any man, after having thus insulted a woman, could lawfully touch her, even in connection with an apology (and such a concession does not seem to us at all well warranted), there is certainly enough in the case to have justified the jury in finding that what he actually did rendered him guilty of a rude insult and a willful violation of the sanctity of her person, amounting in law to an assault and battery.

Counsel for the accused cited and relied upon Section 604 of Wharton's Criminal Law, where the author, in treating of assaults, says that if a man raise his hand against another within striking distance, and at the same time say, "If it were not for your gray hairs, I would tear your heart out," it is no assault, because the words explain the act and take away the idea of an intention to strike. The doctrine as thus stated is sustained by respectable authority. and appears to be good law. It is not in point in this case however, because, as we have seen, the jury might properly have found that the accused intended to commit a trespass upon the person of the prosecutrix, and did not desist until after he had partially carried out that intention by placing his hand upon her.

The cases of *Hardy & Curry* v. *Commonwealth*, 17 Gratt. (58 Va.) 600, and *Woodson* v. *Commonwealth*, 107 Va. 895, 59 S. E. 1097, are also relied upon by counsel for the accused, but we find nothing in either of them to conflict with the conclusion herein reached. In the former, the definition

of assault and battery, approved in the opinion by Judge Moncure, recognizes "an insulting manner" as one of the tests of guilt; and in the latter, the *Woodson Case,* the court merely held that the evidence was not sufficient to warrant a conviction for attempted rape, no question of assault and battery being involved.

The judgment complained of is right, and should be affirmed.

*Affirmed.*